| | |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO<br>1437 Bannock Street<br>Denver, CO 80202<br><br>Plaintiff: **THOMAS SEDLMAYR,**<br><br>v.<br><br>Defendant: **ACE AMERICAN INSURANCE COMPANY f/k/a CIGNA INSURANCE.**<br><br>*Attorneys for Plaintiff:*<br>Alan G. Molk, #10988<br>8400 E. Prentice Ave., Ste. 150<br>Greenwood Village, CO 80111<br>Telephone: 303-221-0039<br>Fax Number: 303-221-4924<br>Email: amolk@molklaw.com<br><br>Lauren E. Varner, #46519<br>8400 E. Prentice Ave., Ste. 150<br>Greenwood Village, CO 80111<br>Telephone: 303-221-0039<br>Fax Number: 303-221-4924<br>Email: lev@larsonandlarimer.com | DATE FILED: March 1, 2018 11:53 AM<br>FILING ID: A71A6E2B6DB9B<br>CASE NUMBER: 2018CV30757<br><br>▲ COURT USE ONLY ▲<br><br>Case Number:<br><br>Division:     Ctrm.: |
| **COMPLAINT** ||

**COMES NOW**, the Plaintiff, Thomas Sedlmayr, by and through his counsel of record, Law Firm of Alan G. Molk, P.C., and Lauren Varner of Larson & Larimer, P.C., hereby submits the following Complaint and, in support thereof, states and alleges as follows:

## I. PARTIES

1. Plaintiff Thomas Sedlmayr is a natural person of the age of majority and currently resides at 15952 Crestrock Circle, Parker, Colorado 80134. Mr. Sedlmayr is, and was, at all times material to the allegations in this Complaint a resident of the State of Colorado.

2. Upon information and belief, at all times relevant to this lawsuit, Defendant Ace American Insurance Company f/k/a Cigna Insurance Company (hereinafter "Defendant Insurer") is an insurance company qualified to do business, and doing business by providing insurance,

including "Group Accidental Dismemberment" plans, to individuals, within the State of Colorado.

3.      Defendant Ace American Insurance Company a/k/a Cigna Insurance Company is a Pennsylvania Corporation with a principal office street address of 436 Walnut Street, Philadelphia, Pennsylvania 19106 and a registered agent of Division of Insurance, 1560 Broadway, Denver, Colorado 80202.

## II. JURISDICTION AND VENUE

4.      This is a common law first-party insurance bad faith and statutory unreasonable conduct action arising from Defendant Insurer's failure to pay benefits to Plaintiff pursuant to a contract of insurance subject to the laws of the State of Colorado.

5.      Venue is proper in this Court under Rule 98(c) of the Colorado Rules of Civil Procedure because Defendant Insurer transacts business in the City and County of Denver, State of Colorado and Defendant Insurer's registered agent is located within the City and County of Denver, State of Colorado.

## III. GENERAL ALLEGATIONS

6.      On the morning of November 13, 2014, Plaintiff was employed as a Service Operator by Halliburton Energy Services, Inc., and was present at a Halliburton oil fracking site located east of WCR 9½ and north of Highway 66 in Mead, Colorado.

7.      Upon information and belief, a high-pressured, 2" steel pipe used for carrying water to the fracking site at the location set forth in paragraph 6 had frozen overnight. While Plaintiff was attempting to thaw the ice plug with a torch, the ice plug came free, allowing 3500 PSI into the pipe. As a result, the iron pipe burst and caused Plaintiff injuries.

8.      Plaintiff suffered severe and permanently disabling bodily injuries, including, but not limited to, multiple left ulna factures, spleen laceration, and loss of his left fourth and fifth digits. Plaintiff was flown by helicopter to Denver General Medical Center for emergent care and remained in intensive care for approximately six days following surgery. He was later diagnosed with additional injuries, including, but not limited to, a left labral tear, a left elbow injury, trapezius/rhomboid strain, a concussion, and depression and anxiety.

9.     In order to address and treat Plaintiff's injuries, Plaintiff treated with several medical providers and received medical care including, but not limited to, multiple surgeries, including partial amputations of his left fourth and fifth digits, an open reduction and internal fixation of his left ulna fracture, and a heterotropic ossification excision and manipulation of his left elbow, a splenectomy, and left shoulder manipulation and scope.

10. In addition, Plaintiff has undergone extensive physical, occupational, and vestibular therapy, neurological evaluations, psychological consultations and testing, psychotherapy, and follow-up care with his surgeons.

11. As a result of this incident, Plaintiff sustained permanent physical impairment. On February 29, 2016, Dr. Robert Kawasaki assigned Plaintiff a 57% left upper extremity permanent impairment rating, equal to a 34% whole person impairment rating pursuant to the AMA Guidelines. On September 13, 2016, Dr. Christopher Ryan assigned Plaintiff a 79% left upper extremity permanent impairment rating, equal to a 48% whole person impairment rating pursuant to the AMA Guidelines.

12. As a result of this incident, Plaintiff can no longer use his left hand for grasping, repetitive motions, and fine manipulation.

13. At all relevant times, Plaintiff was insured under Halliburton's U.S. Domestic Health and Group Benefits package, which included an Accidental Death and Dismemberment Program, policy numbers OK 980086 and OK 980004 ("The Policies").

14. On the date of the incident, The Policies were in effect.

15. On the date of the incident, Plaintiff was a named insured under The Policies.

16. Pursuant to The Policies, an insured or beneficiary is entitled to benefits if the insured is seriously injured in a "covered accident" and suffers a "covered loss." An insured is entitled to benefits based upon the insured's annual base pay plus additional coverage that the insured may purchase in $50,000.00 increments.

17. At the time of this incident, Plaintiff received an annual base pay of $44,000.00 and purchased $400,000.00 of additional coverage under The Policies. The value of benefits that Plaintiff could receive under The Policies totaled $444,000.00.

18. Plaintiff sought dismemberment benefits pursuant to The Policies. On or about January 26, 2015, Plaintiff submitted to Defendant Insurer pursuant to the procedure set forth in The Policies a Proof of Loss Claim Form and a Physician's Certificate of Loss completed by Dr. Kyros Ipaktchi, M.D.

19. On February 11, 2015, Defendant Insurer notified Plaintiff that his injuries were not losses covered by The Policies and Defendant Insurer was denying benefits.

20. Defendant Insurer predicated its February 11, 2015, denial upon the policy language of "Covered Losses," which identifies the loss of all four fingers on one hand and the loss of the thumb and index finger on the same hand as Covered Losses. Defendant Insurer concluded, "There is no indication that you have since suffered any complications resulting in any one of the Covered Losses outlined above."

21. On November 9, 2016, Plaintiff submitted to Defendant Insurer his formal appeal of Defendant Insurer's February 11, 2015, denial.

22. Plaintiff did not dispute Defendant Insurer' decision as set forth in the February 11, 2015, denial, but sought benefits based on Plaintiff's total loss of use of both his left hand and arm.

23. Specifically, Plaintiff sought benefits pursuant to the Covered Loss of "one hand or foot," as Plaintiff's injuries satisfied Defendant Insurer's definition of "loss," "total loss of use of a limb." Accordingly, Plaintiff requested the 50% of covered benefits owed to Plaintiff under The Policies in the amount of $222,000.00.

24. On March 10, 2017, Defendant Insurer notified Plaintiff that that it did not consider Plaintiff's injuries to be losses covered by The Policies and that Defendant Insurer was denying benefits. Defendant Insurer reviewed The Policies, Plaintiff's Proof of Loss Claim Form, Physician's Certificate of Loss completed by Dr. Kyros Ipaktchi, M.D., Mead Municipality Incident Report, and Denver Health Medical Center medical records.

25. Defendant Insurer contended that Plaintiff's limitations did not satisfy The Policies' definition of "Unipelegia," "total paralysis of one upper or one lower limb," and that Plaintiff had not suffered a total loss of limb that was complete and irreversible.

26. On May 11, 2017, Plaintiff submitted to Defendant Insurer an appeal of Defendant Insurers' March 10, 2017, denial.

27. Plaintiff sought benefits for (1) Loss of use of his left hand and (2) Uniplegia.

28. Plaintiff explained that because he cannot use his left hand, his restrictions satisfy The Policies' requirement for the covered loss of "Paralysis," which The Policies define as "total loss of use of a limb."

29. Plaintiff was unable to use his left hand without assistance from his left shoulder, right hand, and right arm.

30. Plaintiff explained that because he lost use of his left hand and arm, his condition satisfies The Policies' requirement for the covered loss of "Unipelgia," which The Policies define as "total paralysis of one upper or one lower limb."

31. While Plaintiff's left arm had some function, he was unable to "use" it. Plaintiff could not grasp, perform repetitive motions, or perform fine manipulations.

32. Plaintiff provided to Defendant Insurer with his May 11, 2017, appeal a CD containing additional medical records.

33. Plaintiff advised in the appeal letter that Plaintiff would be seeing his physician on June 13, 2017, and would supplement additional medical records.

34. On August 20, 2017, Defendant Insurer again notified Plaintiff that it was denying Plaintiff's claims for Loss of One Hand benefits and Uniplegia benefits.

35. Defendant Insurer noted in its denial that it based its decision, in part, on the Examination of Thomas Sedlmayr form that Dr. Ipaktchi completed and an in-house file review by Medical Director Andrea M. Carabello, M.D., MPH.

36. Defendant Insurer acknowledged in its August 20, 2017, denial, "Dr. Ipaktchi, M.D. opined that Mr. Sedlmayr does not have physiological function of his upper left extremity and there was no expected improvement of his condition. Dr. Ipaktchi stated that he believed that no further medical procedure or physical therapy would improve Ms. Sedlmayr's condition, and noted that that he would not be able to use his left upper extremity to bathe, get dressed, open a door, feed himself, drive an automobile or make/take a phone call. Dr. Ipaktchi commented that Mr. Sedlmayr experienced a significant loss of function to his left upper extremity."

37. Medical Director Andrea M. Carabello opined that Plaintiff's "functional limitations are not likely to improve at this point in his clinical course, and thus would be considered to be 'irreversible'…." However, she concluded that Plaintiff's functional limitations of his left elbow, wrist, and hand do not amount to a total loss of functionality of the left upper extremity.

38. Opinions of the Medical Director Andrea M. Carabello contained numerous inconsistencies and omissions about Plaintiff's medical records and treatment.

39. Defendant Insurer concluded that Plaintiff was not eligible for Loss of One Hand or Uniplegia benefits under The Policies.

40. Defendant Insurer's position as set forth in its August 20, 2017, denial takes an unreasonable and inaccurate position that Plaintiff's condition does not meet The Policies' requirements for Covered Losses and benefits.

41. Defendant Insurer has not complied with the contractual obligations owed to Plaintiff by unreasonably denying and delaying payment of Plaintiff's benefits due under The Policies.

42. Defendant Insurer has unreasonably delayed payment of benefits to the Plaintiff.

43. Defendant Insurer has unreasonably denied payment of benefits to the Plaintiff.

44. Defendant Insurer has failed to reasonably evaluate Plaintiff's claim for benefits and has unreasonably denied and delayed payment of Plaintiff's benefits.

45. Defendant Insurer's conduct in failing to pay Plaintiff's benefits was done purposefully, which Defendant Insurer must have realized as dangerous, done heedlessly and

recklessly, without regard for consequences or of the rights and safety of others, particularly to Plaintiff, its insured. Defendant Insurer's failure to pay Plaintiff benefits under The Policies was done without justification and in disregard of Plaintiff's rights.

46. Defendant Insurer has no reasonable basis for denying or delaying the payment of benefits to Plaintiff.

47. Defendant Insurer had knowledge or recklessly disregarded the fact that their delay or denial of the payment of benefits to Plaintiff lacked any reasonable basis.

48. As a direct result of Defendant Insurer's conduct, Plaintiff suffered damages, including, but not limited to, loss of insurance benefits and emotional distress.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

49. Plaintiff hereby incorporates by reference all prior allegations set forth in this Complaint.

50. Plaintiff entered into a contract with the Defendant Insurer for insurance benefits. Plaintiff is an insured and intended beneficiary of the insurance benefits under The Policies.

51. Under Colorado law, every insurance contract contains an implied covenant of good faith and fair dealing and imposes on insurers a duty to act in good faith with their insureds. Pursuant to its implied duty of good faith and fair dealing, Defendant Insurer owed to Plaintiff an obligation to treat Plaintiff's interests with equal consideration to their own interests.

52. Defendant Insurer has breached The Policies by failing to pay benefits to Plaintiff as a result of the injuries, damages and losses sustained in the aforementioned incident.

53. Plaintiff has substantially performed his part of the insurance contract with Defendant Insurer.

54. As direct and proximate result of Defendant Insurer's breach of The Policies, Plaintiff has suffered damages and losses, including, but not limited to, loss of benefits, emotional distress, statutory pre and post-judgment interest, and, in accordance with C.R.S. §10-3-1116(1), an amount equal to twice the amount of "covered benefits" that were denied or delayed, plus reasonable attorney fees and costs incurred in connection with the prosecution of this claim.

## SECOND CLAIM FOR RELIEF
### (Statutory Unreasonable Delay and Denial of Insurance Benefits)

55. Plaintiff hereby incorporates by reference all prior allegations set forth in this Complaint.

56. Defendant Insurer is a person engaged in the business of insurance within the meaning of Colorado Revised Statutes, section 10-3-1115(1)(a).

57. Plaintiff is a first party claimant within the meaning of Colorado Revised Statutes, section 10-3-1115, and has asserted an entitlement to insurance benefits owed directly to him under an insurance policy.

58. Defendant Insurer violated sections 10-3-1115 and 10-3-1116 of Colorado Revised Statutes, when it unreasonably denied and delayed payment of Plaintiff's benefits under the Policy.

59. Plaintiff's benefits under The Policies are "covered benefits" within the meaning of Colorado Revised Statutes, section 10-3-1116(1).

60. Pursuant to Colorado Revised Statutes, section 10-3-1116(1), Plaintiff is entitled to recover an amount equal to twice the amount of "covered benefits" that were denied or delayed, plus reasonable attorney fees and costs incurred in connection with the prosecution of this claim.

61. As direct and proximate result of Defendant Insurer's unreasonable delay and denial of benefits to Plaintiff, Plaintiff has suffered damages and losses, including, but not limited to, loss of benefits, emotional distress, statutory pre and post-judgment interest, and, in accordance with C.R.S. §10-3-1116(1), an amount equal to twice the amount of "covered benefits" that were denied or delayed, plus reasonable attorney fees and costs incurred in connection with the prosecution of this claim.

## THIRD CLAIM FOR RELIEF
### (Common Law Bad Faith)

62. Plaintiff hereby incorporates by reference all prior allegations set forth in this Complaint.

63. Plaintiff suffered injuries, damages, and losses as result of the aforementioned incident.

64. Defendant Insurer acted unreasonably in denying benefits to Plaintiff, in delaying and denying the payment of benefits to Plaintiff, and in improperly evaluating the Plaintiff's claim for benefits.

65. Defendant Insurer knew that its conduct was unreasonable or Defendant Insurer recklessly disregarded the fact that its conduct was unreasonable.

66. Defendant Insurer's unreasonable conduct was a cause of Plaintiff's injuries, damages, and losses.

67. As direct and proximate result of Defendant Insurer's unreasonable delay and denial of benefits to Plaintiff, Plaintiff has suffered damages and losses, including, but not limited to, loss of benefits, emotional distress, statutory pre and post-judgment interest, and, in accordance with C.R.S. §10-3-1116(1), an amount equal to twice the amount of "covered benefits" that were denied or delayed, plus reasonable attorney fees and costs incurred in connection with the prosecution of this claim.

**WHEREFORE**, Plaintiff prays for the entry of Judgment in his favor and against Defendant Insurer for breach of contract in the amount of the covered benefits plus costs and prejudgment interest pursuant to C.R.S. § 13-21-101, post judgment interest, together with an amount equal to twice the covered benefits plus attorney fees and costs pursuant to C.R.S. §§ 10-3-1115 and -1116; and granting such other and further relief as this Court deems just and proper under the circumstances.

**DATED** this 1st day of March, 2018.

Respectfully submitted,

**LAW FIRM OF ALAN G. MOLK, PC**

By: */s/ Alan G. Molk*_____
Alan G. Molk, #10988

**LARSON & LARIMER, P.C.**

By: */s/ Lauren E. Varner*_____
Lauren E. Varner, #46519

*Attorneys for Plaintiff*

Plaintiff's Address:
15952 Crestrock Circle
Parker, Colorado 80134